## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MEDICAL IMAGING & TECHNOLOGY
ALLIANCE *et al.*,

        *Plaintiffs*,

v.

LIBRARY OF CONGRESS *et al.*,

        *Defendants*.

Case No. 1:22-cv-00499-BAH

### Defendants' Reply Memorandum in Support of
### Cross-Motion for Summary Judgment

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

I.      THE LIBRARIAN'S DETERMINATION THAT ACCESSING
        COPYRIGHTED WORKS TO REPAIR MEDICAL DEVICES IS LIKELY
        NONINFRINGING FAIR USE IS CONSISTENT WITH THE COPYRIGHT
        ACT AND BASED ON REASONED DECISIONMAKING...........................................2

        A.      The Purpose and Character of the Uses Contemplated by the Repair
                Exemption Weigh in Favor of Fair Use .............................................................4

        B.      The Nature of Medical Device Software Favors Fair Use ...................................13

        C.      The Amount of Medical Device Software and Data Files Used for Repair
                is Reasonable Relative to the Purpose of the Use...................................................15

        D.      The Effect of Repair on the Potential Market for Medical Device Software
                Weighs in Favor of Fair Use ..............................................................................16

II.     THE LIBRARIAN CONSISTENTLY AND REASONABLY APPLIED
        SUPREME COURT PRECEDENT TO PROPOSED RENEWALS AND
        EXEMPTIONS.............................................................................................................18

III.    THE LIBRARIAN RESPONDED TO ALL SIGNIFICANT COMMENTS IN
        ADOPTING THE REGISTER'S RECOMMENDATION FOR THE REPAIR
        EXEMPTION AND SUBSEQUENT RENEWAL.........................................................19

IV.     ANY RELIEF AFFORDED BY THIS COURT SHOULD BE LIMITED IN
        ACCORDANCE WITH THE APA AND EQUITABLE PRINCIPLES.........................20

CONCLUSION..................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*A.V. ex rel. Vanderhye v. iParadigms, LLC,*
    562 F.3d 630 (4th Cir. 2009) ...................................................................................8

*A&M Records v. Napster*,
    239 F.3d 1004 (9th Cir. 2001) ...........................................................................5, 6

*Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.*,
    845 F. Supp. 356 (E.D. Va. 1994)................................................................4, 13, 18

*Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n,*
    988 F.2d 146 (D.C. Cir. 1993) ...............................................................................21

*Am. Iron & Steel Inst. v. EPA,*
    115 F.3d 979 (D.C. Cir. 1997) ...............................................................................20

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
    82 F.4th 1262 (D.C. Cir. 2023) ..............................................................................13

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
    598 U.S. 508 (2023) .............................................................................................7, 8

*Apple Inc. v. Corellium, Inc.*,
    No. 21-cv-12835, 2023 U.S. App. LEXIS 22252 (11th Cir. Aug. 23, 2023)..........13

*Ark Initiative v. Tidwell,*
    816 F.3d 119 (D.C. Cir. 2016) .................................................................................2

*Ass'n of Private Sector Colls. & Univs. v. Duncan,*
    681 F.3d 427 (D.C. Cir. 2012) ...............................................................................19

*Authors Guild, Inc. v. HathiTrust,*
    755 F.3d 87 (2d Cir. 2014) ...........................................................................*passim*

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) .....................................................................................*passim*

*Cavanaugh v. Wainstein,*
    No. 05-123, 2007 WL 1601723(D.D.C. June 4, 2007) ............................................6

*City of Waukesha v. EPA,*
    320 F.3d 228 (D.C. Cir. 2003) ...............................................................................19

*Ent., Inc. v. Connectix Corp.,*
    203 F.3d 596 (9th Cir. 2000) ...........................................................................14, 15

*Gill v. Whitford,*
    138 S. Ct. 1916 (2018) ...................................................................................20

*Google LLC v. Oracle Am., Inc.,*
    593 U.S. 1 (2021) .................................................................................... *passim*

*Kelly v. Arriba Soft Corp.,*
    336 F.3d 811 (9th Cir. 2003) ......................................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    387 F.3d 522 (6th Cir. 2004) ..............................................................14, 16

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024) ...................................................................................3, 5

*Madsen v. Women's Health Ctr., Inc.,*
    512 U.S. 753 (1994) .................................................................................21, 22

*Mingo Logan Coal Co. v. EPA,*
    829 F.3d 710 (D.C. Cir. 2016) ..................................................................2, 3

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ...............................................................................2, 4, 7

*Nat'l Oilseed Processors Ass'n v. Browner,*
    924 F. Supp. 1193 (D.D.C. 1996) ...............................................................6

*Oceana v. Bureau of Energy Mgmt.,*
    37 F. Supp. 3d 147 (D.D.C. 2014) ..............................................................6

*Perfect 10, Inc. v. Amazon.com, Inc.,*
    508 F.3d 1146 (9th Cir. 2007) ....................................................................8

*Public Citizen, Inc. v. FAA,*
    988 F.2d 186 (D.C. Cir. 1993) ..................................................................19

*Sega Enters. Ltd. v. Accolade, Inc.,*
    977 F.2d 1510 (9th Cir. 1992) ..................................................................18

*SOFA Ent., Inc. v. Dodger Prod., Inc.,*
    709 F.3d 1273 (9th Cir. 2013) ..................................................................16

*Triad Systems Corp. v. Southeastern Express Co.,*
    64 F.3d 1330 (9th Cir. 1995) ..............................................................4, 13

*Troy Corp. v. Browner,*
    120 F.3d 277 (D.C. Cir. 1997) ....................................................................2

**STATUTES**

17 U.S.C. § 1201(a)(1)(C)........................................................................................................1, 3

17 U.S.C. §§ 501-505.............................................................................................................7, 21

## INTRODUCTION

The 2021 and 2024 final rules exempting users who access copyrighted software and data files for the purpose of diagnosis, maintenance, and repair of medical devices and systems from the Digital Millenium Copyright Act's ("DMCA") anti-circumvention provision (the "Repair Exemptions") was a reasonable exercise of the Librarian of Congress's ("the Librarian") statutory authority and satisfies all substantive and procedural requirements of the Administrative Procedure Act ("APA"). In determining that diagnosis, maintenance, and repair of medical devices and systems are likely noninfringing fair uses of the device software and data files, pursuant to 17 U.S.C. § 1201(a)(1)(C), the Librarian thoroughly explained her analysis and responded to the proffered evidence and arguments in Plaintiffs' significant comments.

Plaintiffs' claims that the 2021 and 2024 Repair Exemptions violate the APA on procedural and substantive grounds are meritless. Plaintiffs' primary argument is that they disagree with the Librarian's conclusions as to the first and fourth factors of the fair use analysis. But, as explained in detail below, the Librarian reasonably determined based on the administrative record that the diagnosis, maintenance, and repair of medical devices and systems are likely noninfringing fair uses of copyrighted software and data files. The Librarian conducted the flexible, non-exhaustive four-factor fair use analysis, taking into consideration relevant case law and available facts. That is by itself sufficient to defeat Plaintiffs' arbitrary and capricious claims under *State Farm*'s minimal threshold. Plaintiffs also claim that the Librarian violated the APA's procedural requirements by failing to respond to Plaintiffs' significant comments. But the Librarian *did* address each of those comments, and Plaintiffs merely disagree with the Librarian's thoroughly explained conclusions.

For these reasons, Plaintiffs' motion for summary judgment should be denied, and

summary judgment should be entered in favor of Defendants.

## ARGUMENT

I. **THE LIBRARIAN'S DETERMINATION THAT ACCESSING COPYRIGHTED WORKS TO REPAIR MEDICAL DEVICES IS LIKELY NONINFRINGING FAIR USE IS CONSISTENT WITH THE COPYRIGHT ACT AND BASED ON REASONED DECISIONMAKING**

The Librarian's conclusion that diagnosis, maintenance, and repair of medical devices and systems are likely noninfringing fair uses of copyrighted software and data files easily meets the "minimal standards of rationality" required by the APA, *Troy Corp. v. Browner*, 120 F.3d 277, 283 (D.C. Cir. 1997), as explained in Defendants' opening brief, Defs.' Mot. for Summ. J. at 15–16, ECF No. 35 ("Defs.' Br."). The scope of judicial review under the arbitrary-and-capricious standard "is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Instead, the court "must confirm that the agency has fulfilled its duty to 'examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Ark Initiative v. Tidwell*, 816 F.3d 119, 127 (D.C. Cir. 2016) (cleaned up). As the D.C. Circuit explained: "Whether we would have done what the agency did is immaterial." *Mingo Logan Coal Co. v. EPA*, 829 F.3d 710, 718 (D.C. Cir. 2016).

Plaintiffs argue that the Librarian's decision is arbitrary and capricious because it does not offer a "compelling justification" to conclude that the proposed uses under the exemption are "fair uses" under copyright law. Pls.' Reply in Supp. of Mot. for Summ. J. at 4, ECF No. 42 ("Pls.' Resp."). This argument fails because it both misstates the relevant inquiry, which is not to conclude that the uses are categorically fair uses, but that it was reasonable for the Librarian to conclude that they are likely fair uses, and because, on the merits, the uses likely are noninfringing fair uses. As explained in Defendants' opening brief, *see* Defs.' Br. at 4–5, the DMCA directs the

Librarian to make exemptions via rulemaking if "persons who are users of a copyrighted work are, or *are likely to be* in the succeeding 3-year period, adversely affected by the [anti-circumvention prohibition] in their ability to make noninfringing uses under this title of a particular class of copyrighted works." 17 U.S.C. § 1201(a)(1)(C) (emphasis added). Therefore, consistent with applicable APA precedent and 17 U.S.C. § 1201(a)(1)(C), the Court's inquiry is not whether the proposed uses are fair uses—or even whether the proposed uses are likely to be fair uses in the abstract—but rather, whether the Librarian's judgment that the proposed uses are likely fair uses is reasonable and reasonably explained.

Moreover, the fair use doctrine, by its nature, is a flexible doctrine, and thus the Librarian's predictive judgment about its application in the abstract is necessarily subject to discretion. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024) (explaining that a statute may afford discretion to an agency to "fill up the details" of a statutory scheme) (citation omitted). Fair use is a court-made "equitable rule of reason" that allows courts to "avoid rigid application of the copyright statute" when strict applications would be contrary to the goals of copyright law. *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 18 (2021). Although the Copyright Act "embodies" the fair use doctrine in four statutory factors, the factors are "not exhaustive" and do not "dictate[]" how the doctrine must be applied in a given case. *Id.* at 1196–97. The Librarian, by adopting the Register's Recommendation, relies on her expertise and that of the agency responsible for interpreting the copyright laws of the United States, to make a rational determination as to whether specific circumstances are *likely* to be noninfringing fair use, consistent with this flexible doctrine. And because no one factor is determinative in the analysis, Plaintiffs would have to show that the Librarian's decision, which considered and weighed all four fair use factors, was such an unreasonable interpretation of the fair use case law that it exceeds the bounds of rationality.

Plaintiffs have failed to make this showing.

###### A. The Purpose and Character of the Uses Contemplated by the Repair Exemption Weigh in Favor of Fair Use

Plaintiffs continue to rely on outdated cases and ignore key parts of the Register's analysis and Librarian's determination to support their assertion that the purpose and character of the use cannot support a finding that the relevant conduct is not likely to be fair use.

**Commercial use.** *First,* the Librarian's finding that commerciality is not necessarily dispositive is based on binding precedent and a rational examination of the facts. *See State Farm*, 463 U.S. at 43. However, Plaintiffs repeat earlier arguments that diagnosis, maintenance, and repair cannot be fair uses because some users engaged in these activities, namely ISOs, can make a profit from repair of medical equipment. But, as explained in Defendants' opening brief, Defs.' Br. at 19, Plaintiffs' assertion that the fair use analysis is resolved by whether the proposed use has the potential to render a profit is inconsistent with U.S. Supreme Court precedent. *See Google LLC*, 593 U.S. at 32 ("[M]any common fair uses are indisputably commercial" and commercial endeavors are "not dispositive of the first factor"); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584–85 (1994) ("[I]f, indeed, commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listen in the preamble paragraph of § 107, including news reporting, comment, criticism, teaching, scholarship, and research, since these activities are generally conducted for profit in this country.").

Plaintiffs continue to rely on two non-binding cases that do not undertake the fair use analysis as contemplated by current Supreme Court precedent, *Triad Systems Corp. v. Southeastern Express Co.*, 64 F.3d 1330 (9th Cir. 1995), and *Advanced Computer Services of Michigan, Inc. v. MAI Systems Corp.*, 845 F. Supp. 356 (E.D. Va. 1994). But Plaintiffs do not meaningfully respond to Defendants' argument that neither case has relevance to this Court's

4

analysis of whether the Librarian's grant of the Repair Exemption was arbitrary or capricious. Defs.' Br. at 22; *see* Pls.' Resp. at 2 (responding only that the government "disregards the only two cases that have confronted similar claims as ours").

Importantly, the Repair Exemption does not apply only to users that may commercially profit from repairs, like ISOs, but as the Librarian reasonably found, applies to a broad class of users, including staff technicians at non-profit medical facilities and other owners of medical devices. LOC_AR_1909; *see Loper Bright Enters.*, 144 S. Ct. at 2267 (courts should review an agency's fact-finding with deference where that fact-finding is within the agency's area of expertise). Those users may use the Repair Exemption to access copyrighted works in order to perform repairs not primarily to receive a commercial benefit—for example, they may forego a customary licensing fee—but instead to restore functionality to a device in a timely manner so that they can provide medical services. LOC_AR_1909. Plaintiffs cite to an out-of-circuit case, *A&M Records v. Napster*, 239 F.3d 1004 (9th Cir. 2001), to argue that a use without a direct economic benefit can still be a commercial use. Defendants do not disagree with this proposition. But the principle *Napster* described is a series of situations in which books and articles were photocopied and/or distributed without paying a fee, and the court determined that those users indirectly profited. *See A&M Records v. Napster*, 239 F.3d at 1015. Here, by contrast, the Repair Exemption does not allow for "repeated and exploitative copying," *id.*, and does not allow for users to freely distribute copyrighted material. Instead, the exempt diagnosis, maintenance, and repair uses "are intended to restore a medical device or system's functionality, not to commercialize the embedded copyrighted software and other servicing materials." LOC_AR_1782. And that activity does not necessarily entail indirect profit, LOC_AR_1909, thus rending *Napster* inapplicable.

Nor are Plaintiffs correct that the agency's conclusion that the relevant uses are not necessarily commercial is a "newfound contention" or a "post hoc rationalization" that is not a part of the administrative record. Pls.' Resp. at 5, 20. The Register reasoned in 2021, and re-adopted in 2024, that the "the proposed activities are intended to restore a medical device or system's functionality, not to commercialize the embedded copyrighted software and other servicing materials." LOC_AR_1909. To support this conclusion, the Register considered declarations from non-ISO medical facility personnel discussing in-house repair services. *See e.g., id.* at n.1154 (citing declarations, including a declarant's statement that "[s]ervicing the medical equipment owned by lawful possessors is primarily for public benefit, as access to materials required for servicing is imperative in treating patients, and is especially critical during a pandemic such as the current COVID-19 crisis."). This therefore does not constitute an impermissible post-hoc rationalization. *See Nat'l Oilseed Processors Ass'n v. Browner*, 924 F. Supp. 1193, 1204 (D.D.C. 1996) (no impermissible post-hoc rationalization where an agency's explanations are supported by evidence in the administrative record and the government supplies a more detailed explanation in response to a legal challenge); *Oceana v. Bureau of Energy Mgmt.*, 37 F. Supp. 3d 147, 159 n.11 (D.D.C. 2014) (same); *Cavanaugh v. Wainstein*, No. 05-123, 2007 WL 1601723 at *11, n.12 (D.D.C. June 4, 2007) (same).

Contrary to Plaintiffs' assertions, the Librarian's decision does *not* claim that all repair uses are "inherently" fair, Pls.' Resp. at 6, and does not necessarily extend to all commercial activities. Rather, the Librarian concludes—based on the administrative record—that the specific uses of medical device software and data files to restore functionality to those devices, only if certain conditions are met, are likely to be fair uses, and thus subject to the applicable DMCA exemption. LOC_AR_1929. This finding does not create a safe harbor for copyright infringement. Just the

6

opposite, to the extent that certain commercial repair activities, including any activities that fall outside the scope of the Repair Exemption, are *not* noninfringing fair uses in specific instances, Plaintiffs may still assert copyright infringement claims under 17 U.S.C. §§ 501-505.  *See* LOC_AR_198 ("2024 Rule") (under the Repair Exemption, the anti-circumvention prohibition "shall not apply to persons who engage in noninfringing uses of" the enumerated classes).

Ultimately, commerciality, like all relevant factors in the fair use analysis, is to be analyzed by a "sensitive balancing of interests," *Campbell*, 510 U.S. at 584, which the Register did here in concluding that repair of medical equipment by accessing its software is focused on restoring functionality, and not commercializing the software, although users may benefit from such access. LOC_AR_1909; *see Google LLC*, 593 U.S. at 32 ("[M]any common fair uses are indisputably commercial.").  That conclusion was not arbitrary and capricious in light of the applicable law and the administrative records.

***Transformative use.***  *Second*, the Librarian's finding that use of the copyrighted materials for the purpose of diagnosis, maintenance, and repair of medical equipment was likely transformative is rational and reasonably explained.  *See State Farm*, 463 U.S. at 43.  However, Plaintiffs, relying on *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023), take issue with the Register's conclusion, LOC_AR_1782, by arguing that the diagnosis, maintenance, and repair of medical devices does not have a "different character" or "further purpose" compared to the original use because "*all* of the copy-righted works at issue have always had among their initial purposes the maintenance, diagnosis, and repair of the machines."  Pls.' Resp. at 6 (quoting *Warhol*, 598 U.S. at 525); *id.* at 11.  As an initial matter, *Warhol* does not create a new test that a work must fall into one of two distinct categories of "further purpose" or "different character" in order for the work to be transformative, but merely cites to *Campbell* for the

7

longstanding proposition that "[a] use that has a further purpose or different character is said to be 'transformative.'" *Warhol*, 598 U.S. at 532. The term "further purpose or different character" is a term of art to refer to a transformative work, rather than two distinct categories. *See Google*, 593 U.S. at 29; *Campbell*, 510 U.S. at 579. And as explained in Defendants' opening brief, Defs.' Br. at 18, a work can be transformative in different ways: for example, a work can be transformative if it alters the original work, or if it serves a new and different function from the original work. *See A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 639 (4th Cir. 2009). Here, Defendants do not argue that the diagnosis, maintenance, and repair of medical devices "alter[s] or actually add[s] to the original work," *id.*, but rather argue that it "serves a different function than the original work," *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007). The Librarian reasonably concluded that the use of the copyrighted materials for the purpose of diagnosis, maintenance, and repair of medical equipment was likely transformative because these uses serve a "different function," *id.*, than the original code. LOC_AR_2093–94. *See also Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014) ("[A] transformative work is one that serves a new and different function from the original work and is not a substitute for it."); *A.V. ex rel. Vanderhye*, 562 F.3d at 639 ("The use of a copyrighted work need not alter or augment the work to be transformative in nature. Rather, it can be transformative in function or purpose without altering or actually adding to the original work.").

Contrary to Plaintiffs' assertions, Pls.' Resp. at 9, the exemption for the diagnosis, maintenance, and repair of medical devices is not the same as "making an unaltered copy and then using it for the same or a similar purpose." As previously explained, Defs.' Br. at 19, the Register concluded that copying necessary for diagnosis, maintenance, and repair would serve to "restore a medical device or system's functionality," LOC_AR_1782, and that this use serves a different

function than the original purpose because "the purpose of the use of software in repair is to render a non-functional device functional again, while the original purpose of the software is to operate a device that functions as designed," LOC_AR_2093–94. The Librarian concluded that diagnosis, maintenance, and repair were "likely transformative" uses based on consideration of previous conclusions in other contexts involving the repair of other types of software-enabled devices. *See, e.g.*, Section 1201 Rulemaking: Sixth Triennial Rulemaking to Determine Exemptions to the Prohibition on Circumvention: Recommendation of the Register of Copyrights 234–35 (Oct. 2015), LOC_AR_1059–60 (finding that some uses of vehicle computer programs were likely to be transformative because they "facilitate functionalities such as diagnosis, modification and repair" that "enhance the intended use of [vehicle] computer programs"); 2015 Rule, LOC_AR_76–96   (adopting Register's 2015 Recommendation); Section 1201 Rulemaking: Seventh Triennial Rulemaking to Determine Exemptions to the Prohibition on Circumvention: Recommendation of the Acting Register of Copyrights 203 (Oct. 2018), LOC_AR_1434 (recommending exemption for repair of home appliances, computers, and smartphones, and noting that "because the fundamental purpose of repair is to restore the functionality of a device so that it may be used, 'repair supports—rather than displaces—the purpose of the embedded programs'"); 2018 Rule, LOC_AR_116–37 (adopting Register's 2018 Recommendation); Section 1201 Rulemaking: Eighth Triennial Rulemaking to Determine Exemptions to the Prohibition on Circumvention: Recommendation of the Register of Copyrights (Oct. 2021), LOC_AR_1902 (recommending exemption for diagnosis, maintenance, and repair of software-enabled consumer devices, where "the purpose is to restore device functionality"); 2021 Rule, LOC_AR_161–75 (adopting Register's 2021 Recommendation). The Librarian also considered a fact-specific analysis with respect to medical devices, *see* LOC_AR_1908–13 (analyzing application of four-

factor fair use analysis to diagnosis, maintenance, and repair of medical device software and data files).  It was therefore reasonable for the Librarian to conclude that the diagnosis, maintenance, and repair of a medical devices are likely "something more than repackag[ing] or republish[ing] the original copyrighted work," *HathiTrust*, 755 F.3d at 96.  Plaintiffs may disagree with the Librarian's decision, but they do not and cannot show that the predictive judgment was not reasonable or reasonably explained such that it was arbitrary and capricious.

As noted above, *supra* at 9, the Register, and the Librarian by adopting the Register's reasoning, partially based her conclusion on prior recommendations concluding that diagnosis, maintenance, and repair are likely transformative uses for other software-enabled devices such as smartphones, household appliances, and vehicles (including agricultural equipment).  *See Google LLC*, 593 U.S. at 30–32 (finding the purpose and character of copying software transformative where the use "create[d] new products" and "expand[ed] the use and usefulness" of devices using the software).  Plaintiffs take issue specifically with the Register's reference to the vehicle exemption by arguing that the "ISOs there sought an exemption that explicitly included alteration to accomplish their ends."  Pls.' Resp. at 7–8.  But Plaintiffs misread the automobile exemption to apply only to "modification," a use not at issue here.  In the 2015 Recommendation, for example, the Register considered whether the use of vehicle computer programs for purposes of "diagnosis, modification, and repair" was likely transformative.  LOC_AR_1186–87.  In addition to discussing modification with diagnosis and repair, the Register singled out diagnosis and repair separately, noting that "the proposed uses for diagnosis and repair would presumably enhance the intended use of ECU computer programs," which supported a fair use finding under the first fair use factor—the purpose and character of the use.  *Id.*  This analysis closely tracks the Register's reasoning in recommending the Repair Exemption at issue here.  Moreover, and contrary to

10

Plaintiffs' characterization, the Register did not base her finding that some "proposed uses" of ECU computer programs are "likely transformative," solely on modification of computer programs. *Id.* Rather, she concluded that copying the software would "facilitate functionalities such as diagnosis, modification, and repair." LOC_AR_1186. The Register said that such uses "*may also* extend to modification" but did not state that modification was required, *id.*, as Plaintiffs suggest. Pls.' Resp. at 7–8. Nor do Plaintiffs appear to object to the Librarian's conclusion, consistent with the Register's reasoning, that the first fair use factor analysis for medical devices is consistent with the analysis of diagnosis, maintenance, and repair of other software-enabled consumer devices.

Plaintiffs argue that restoring functionality to medical equipment is the same purpose for which the medical equipment's software was designed. Pls.' Resp. at 11–13. Presumably, manufacturers develop medical equipment (and the software that controls such equipment) for the purpose of using such equipment. Take an MRI machine for example—the purpose of the software that controls the MRI machine is to make MRIs that allow medical professionals to use the images for treating patients. The purpose cannot be to restore that MRI machine's functionality, otherwise the manufacturers would be assuming that their machine is already non-functional. Thus, by accessing software for the purpose of repairing, maintaining, and diagnosing broken MRI machines or other medical equipment, users are attempting to restore the machine to the same functionality that it possessed prior to the need for repair, not to make medical images for the purpose of diagnosing medical conditions.

Plaintiffs argue that the Repair Exemption provides access to specific instances of software that *does* have the purpose of diagnosis or maintenance of the device, Pls.' Resp. at 11–12. But it was not unreasonable for the Librarian to undertake a fair use analysis based on uses of the medical

device software in its entirety, rather than a specific portion of the software's code or manuals. Plaintiffs do not demonstrate otherwise.   Even if the Court accepts Plaintiffs' implication that the Librarian was required to undertake the fair use analysis based on specific portions of software written for diagnosis or repair, rather than the software in its entirety, the Repair Exemption would still entail a "different function."  This is because the original copyrighted material, including any software related to diagnosis or maintenance, exists to make medical images for the purpose of diagnosing medical conditions with the presumption that the machine is functional; if the medical device is non-functional, access to the copyrighted material, is intended to restore the machine's functionality (and therefore serves a different function).  In addition, the diagnosis, maintenance, or repair of medical device software or data files does not serve as a "substitute for the original," which courts consider as a part of a transformativeness analysis, *HathiTrust*, 755 F.3d at 96 ("[A] transformative work is one that serves a new and different function from the original work and is not a substitute for it."), regardless of whether the original work is viewed as the entire software or a specific portion of it.  Under either approach, the diagnosis, repair, or maintenance leaves the original software intact and restores functionality to the device so that the original software can serve its primary purpose: enabling users to operate the device in performing medical procedures.

Plaintiffs offer no plausible explanation of how the Librarian's discussion of *Warhol* requires the Court to find that the Librarian's decision that the diagnosis, maintenance, and repair of medical devices are likely transformative uses was not reasonable or reasonably explained.  As Defendants explained in their opening brief, Defs.' Br. at 22, the Register thoroughly addressed Plaintiffs' interpretation of *Warhol*, LOC_AR_2094, and explained how *Warhol* was consistent with the Supreme Court's earlier decisions in *Campbell* and *Google*, *id.*  The Register also supported her decision with relevant case law, including by noting that "the Eleventh Circuit

recently denied a motion for rehearing in a case involving fair use decided prior to the *Warhol* decision, concluding that the intervening Supreme Court opinion did not affect its analysis of transformativeness under the first fair use factor or the "balance of the four factors." LOC_AR_2094 (quoting *Apple Inc. v. Corellium, Inc.*, No. 21-cv-12835, 2023 U.S. App. LEXIS 22252, at *3 (11th Cir. Aug. 23, 2023) (denying petition for rehearing and rehearing en banc)). For the reasons discussed above, the "different function" to restore a medical device or system's functionality (compared to the original function of the software to operate as designed) constitutes a transformative use under *Warhol* and *Campbell*. While Plaintiffs misread *Warhol* to require any proposed use to "create[] [something] new," Pls.' Resp. at 11, the D.C. Circuit has made clear that, after *Warhol*, "a secondary work can be transformative in function or purpose without altering or actually adding to the original work," *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1268 (D.C. Cir. 2023) (citation omitted); *see also id.* ("[A] reporter's message ('this is what they said') is very different from the original message ('this is what you should believe').").

Finally, nothing in *MAI Systems* or *Triad* changes this conclusion. Pls.' Resp. at 14. The Court in *MAI Systems* did not evaluate whether the proposed use was transformative, instead relying solely on the commercial nature of the use, which the Supreme Court has since clarified is not dispositive in fair use analysis. 845 F. Supp. at 365, *cf. Campbell*, 510 U.S. at 584–85. The Court in *Triad* also relied on commerciality, conducting its limited transformative use analysis without reference to the standard set forth in *Campbell*. *Triad Sys. Corp.*, 64 F.3d at 1336–37.

## B.    The Nature of Medical Device Software Favors Fair Use

The Librarian also reasonably concluded that the second statutory fair use factor weighed in favor of a fair use determination. Plaintiffs offer little meaningful response to that conclusion, and instead largely reiterate the arguments from their opening brief. *See* Pls.' Resp. at 18–19.

With respect to the second factor, "the nature of the copyrighted work," the Register correctly found that it favored fair use because "the computer programs and data embedded in medical devices and systems are not used for their expressive qualities, but rather for their functional and informational aspects that enable users to control and understand the operation of the equipment." LOC_AR_1910.  In reaching this conclusion, the Register relied on legal precedent favoring fair use when computer programs were used for their functional aspects rather than as expressive works.  LOC_AR_1910 (collecting cases, including *Google LLC*, 593 U.S. 1; *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 522 (6th Cir. 2004); *Sony Comput. Ent., Inc. v. Connectix Corp.*, 203 F.3d 596 (9th Cir. 2000)).  Plaintiffs appear to argue that medical device software is "expressive" rather than "functional and informational," despite that the Register reasonably explained her decision and relied on a number of cases in support of that decision.  But Plaintiffs do not and cannot show that the Register or Librarian did not make a reasonable decision based on the administrative record, including by consideration of cases that discussed the "functional and informational" aspects of similar software, and therefore the Librarian's decision does not rise to the level of arbitrary and capricious.

Plaintiffs also repeat their previous incorrect argument that the Librarian made the fair use determination based solely on the fact that there will be "public benefits" from access to the copyrighted material at issue, Pls.' Resp. at 18–19, which Defendants rebutted in their opening brief, Defs.' Br. at 23–24.  Moreover, Plaintiffs suggest, without any basis in the record, that the Librarian asserted that the second factor of the fair use analysis was "dispositive," Pls.' Resp. at 19, which is easily disproved by the administrative record and clear evidence that the Librarian's determination was supported by the Register's four-factor analysis, *see* LOC_AR_1908–12 (analyzing each of the four factors based on the record and concluding that "[t]aken together, the

factors indicate that the proposed uses are likely to be noninfringing").

### C.  The Amount of Medical Device Software and Data Files Used for Repair is Reasonable Relative to the Purpose of the Use

The Librarian also reasonably concluded that the third statutory fair use factor weighed in favor of a fair use determination.  With respect to the third statutory factor, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," the Librarian adopted the Register's finding that "the amount used is reasonable relative to the purpose of the use," LOC_AR_1911, and this factor should be given less weight in the repair context "because the use is necessary to accomplish the transformative purposes of diagnosis, maintenance, and repair," *id.*  The Register reasonably relied on comments that "[t]he servicing computer programs and data files involved can be but a small portion of the entire software package," LOC_AR_1910, and determined that even if diagnosis, maintenance, and repair would require use of the entirety of works stored on medical devices and systems for certain equipment, "the amount used is reasonable relative to the purpose of the use," LOC_AR_1911.  In reaching this decision, the Register considered that "courts have been willing to permit extensive copying of the original work where it is necessary to accomplish a transformative purpose."  2015 Recommendation, LOC_AR_1188 (citing *HathiTrust*, 755 F.3d at 98 and *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003)).  Plaintiffs do not plausibly argue that the Librarian acted arbitrarily and capriciously by relying on court decisions that are consistent with her conclusion.  Nor do Plaintiffs disagree that "copying a large[] amount of material can fall within the scope of fair use where the material copied . . . is central to a copier's valid purpose."  *Google LLC*, 593 U.S. at 33.  Plaintiffs fail to show that the Librarian did not make a reasonable decision based on the administrative

record, and therefore, the Librarian's actions do not rise to the level of arbitrary and capricious.

**D.    The Effect of Repair on the Potential Market for Medical Device Software Weighs in Favor of Fair Use**

With respect to the fourth statutory fair use factor, effect of the use on the potential market for or value of the copyrighted work, Plaintiffs advance an expansive view of market harm that is inconsistent with how courts analyze this factor. They urge this court to look beyond sales and licensing of software installed on medical devices to the service contracts for repair of the devices themselves. Market harm is usually focused on the market for the specific work itself. *Lexmark Int'l.*, 387 F.3d at 544; *see also Campbell*, 510 U.S. at 590 (considering whether use of copyrighted materials "would result in a substantially adverse impact of the potential market for the *original*"). In analyzing market harm, courts consider harms that result because of market substitution, where the secondary use market (here, the repair market) is substituting for the original (here, the software market). *See Campbell*, 510 U.S. at 591 (considering whether use of copyrighted materials "affect[ed] the market for the original in a way cognizable under [the fourth] factor, that is, by acting as a substitute for it"); *Lexmark Int'l.*, 387 F.3d at 544 (noting that "relevant question" in fourth factor analysis was whether the infringement "impact[s] the market for the copyrighted work itself"); *see also SOFA Ent., Inc. v. Dodger Prod., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013) ("Where the secondary use is not a substitute for the original . . . the fourth factor weighs in favor of fair use."); *HathiTrust*, 755 F.3d at 99 ("[T]he Factor Four analysis is concerned with only one type of economic injury to a copyright holder: the harm that results because the secondary use serves as a substitute for the original work.").

Here, the original market is that of the software itself, typically licensed with the device that it runs on. LOC_AR_1912. Thus, the market for the software is tethered to the purchase of the device. As explained in Defendants' opening brief, Defs.' Br. at 25–26, the Register

determined that "most medical device and system software and data files generally have no independent value separate from being used with the equipment," LOC_AR_1912, and "[e]ven where the software could be installed on another 'standalone' computer, there is no indication that the software serves any function, or has any value, except for use with the medical device or system for which it was designed," *id.*  Therefore, accessing and incidentally copying that software to repair the medical devices that it is designed to control does not usurp the original market for the software itself because "there is no indication that the software serves any function, or has any value, except for use with the medical device or system for which it was designed." LOC_AR_1912.

Plaintiffs' arguments to the contrary are unavailing.  Plaintiffs merely repeat their first factor argument that "ISOs are engaged in non-transformative duplication of OEM's protected works to serve the commercial purposes for which those works were designed."  Pls.' Resp. at 17. This is incorrect, for the reasons discussed above, *supra* Part I.A.  And, similar to the above, Plaintiffs' argument is improperly focused on the potential for commercial activity by one type of user—ISOs—that may seek to engage in circumvention under the Repair Exemption.  The Librarian properly relied on the Register's fair use analysis, which considered the fourth factor's application to *all* potential users, which include, as the administrative record indicates, staff technicians at non-profit medical facilities and other owners of the medical devices.  *See* LOC_AR_1909.  Plaintiffs attempt to narrow the scope of the fair use analysis, but they do not plausibly argue that it was *unreasonable* for the Librarian or Register to consider the application of the fair use factors to all potential users of the Repair Exemption.

Finally, Plaintiffs have dropped their arguments that the Repair Exemption will "have a significant chilling effect on further innovations," Pls.' Mot. for Summ. J. at 25, ECF No. 35 ("Pls.'

Br."), and "increase the potential for device malfunction and cybersecurity attacks," *id.* Nor do Plaintiffs offer any response to Defendants' arguments that the Librarian properly considered the public benefits of the exemption, including supporting the healthcare system, Defs.' Br. at 29. Instead, Plaintiffs argue that the Librarian may not consider public benefits, citing an out-of-circuit district court case that, contrary to Plaintiffs' sweeping assertion, does *not* say that "the only relevant public benefit for copyright purposes is 'the development of art, science, and industry,'" *see* Pls.' Resp. at 17 (citing *MAI Sys.*, 845 F. Supp. at 365) ("This public benefit, however, *typically involves* 'the development of art, science, and industry.'" (emphasis added)). Importantly, not only does repair relate to the development of science and the healthcare industry by supporting the healthcare system, *id.*, but it also supports copyright by restoring the ability to fully use functional copyrighted software installed on medical devices.

At bottom, in opposing the Repair Exemption, Plaintiffs "attempt to monopolize the market" for repair, which "runs counter to the statutory purpose of promoting creative expression and cannot constitute a strong equitable basis for resisting the invocation of the fair use doctrine." *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1523–24 (9th Cir. 1992). Because the Librarian's determination, based on the Register's Recommendation, that use of medical equipment software and data files for diagnosis, maintenance, and repair of medical equipment was likely a noninfringing fair use supported by the record, Plaintiffs' substantive APA challenge should be rejected.

## II.    THE LIBRARIAN CONSISTENTLY AND REASONABLY APPLIED SUPREME COURT PRECEDENT TO PROPOSED RENEWALS AND EXEMPTIONS

Plaintiffs offer no response to Defendants' arguments, s*ee* Defs.' Br. at 30–32, that the Librarian applied the fair use factors, including application of the Supreme Court's decision in *Warhol*, consistently across the 2024 rulemaking classes. Rather, the Librarian appropriately made

distinctions among different categories. Plaintiffs ignore Defendants' reasonable explanation that the Librarian did not expand the exemption to "for-profit and nonaccredited online educational entities" because the first fair use factor—the "purpose and character" of the use—weighed against expanding that exemption to for-profit entities. That is not true here, for the reasons stated above. Plaintiffs also reiterate their earlier arguments that the first factor does not weigh in favor of users of the Repair Exemption, which Defendants address above, *supra* at Part I.A. Even if Plaintiffs would reach a different conclusion from the Librarian, they fail to show, as they must, that the Librarian's conclusion was *unreasonable*.

## III.   THE LIBRARIAN RESPONDED TO ALL SIGNIFICANT COMMENTS IN ADOPTING THE REGISTER'S RECOMMENDATION FOR THE REPAIR EXEMPTION AND SUBSEQUENT RENEWAL

The Librarian more than adequately responded to all significant comments by adopting the Register's Recommendation. While an agency must address "significant comments raised during the rulemaking," the "obligation to respond . . . is not particularly demanding." *Ass'n of Private Sector Colls. & Univs. v. Duncan*, 681 F.3d 427, 442 (D.C. Cir. 2012) (internal quotation omitted). Plaintiffs appear to concede that the Librarian in fact responded to each of these comments but contest the sufficiency of the responses. However, an agency is also "not required to discuss every item of fact or opinion included in the submissions made to it in informal rulemaking," *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) (internal quotation omitted), and the Librarian's explanations demonstrate her consideration of the "relevant factors." *City of Waukesha v. EPA*, 320 F.3d 228, 258 (D.C. Cir. 2003).

First, Plaintiffs argue that the Librarian did not adequately consider Plaintiffs' comments that *Warhol* alters the Librarian's fair use analysis. Pls.' Resp. at 21. But, as explained in Defendants' opening brief, Defs.' Br. at 34, the Librarian relied on the Register's recommendation, which addressed Plaintiffs' comment and accurately responded that *Warhol* did not require any

new analysis because "[t]he *Warhol* decision does not substantially change how the Office would analyze the uses at issue in this exemption." LOC_AR_2094. The Librarian also relied on case law, discussed above *supra* at Part I.A, that explained that *Warhol* did not affect the first factor analysis specifically or the balance of the four-factor analysis. Plaintiffs simply disagree with how the Librarian interpreted *Warhol*, but do not show that the Librarian failed to adequately respond to their comment.

Second, Plaintiffs argue that the Librarian failed to address comments highlighting ISOs' for-profit interests in OEM's copyrighted material because she did not accept Plaintiffs' arguments about commerciality. Pls.' Resp. at 21. But, as explained in Defendants' opening brief, Defs.' Br. 33–34, the Librarian considered commerciality in the context of the first fair use factor. Plaintiffs repeatedly ignore the Register's conclusion that, even where the uses are somewhat commercial in nature, those engaged in medical device repair use copyrighted material for a different and transformative purpose than OEMs intended, *i.e.,* to "restore a medical device or system's functionality." LOC_AR_1782. Regardless of whether Plaintiffs agree with this substantive analysis, Plaintiffs cannot reasonably argue that the Librarian failed to identify a basis for that analysis.

Because the Librarian "considered the 'relevant factors'" in deciding to grant the Repair Exemption, Plaintiffs' procedural APA challenge lacks merit. *Am. Iron & Steel Inst. v. EPA*, 115 F.3d 979, 1005 (D.C. Cir. 1997).

## IV.    ANY RELIEF AFFORDED BY THIS COURT SHOULD BE LIMITED IN ACCORDANCE WITH THE APA AND EQUITABLE PRINCIPLES

Plaintiffs do not offer a plausible justification for why the proper remedy for any violation here is vacatur of the Repair Exemption, despite clear precedent that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934

(2018); *see also Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted) (an injunction must be no broader than "necessary to provide complete relief to the plaintiffs."). As Defendants previously explained, Defs.' Br. at 36–39, the Court should decline to vacate the Repair Exemption under traditional equitable principles because declaratory judgment or a more limited injunction would suffice.

Even assuming *arguendo* that vacatur is authorized by the APA, *contra* Defs.' Br. at 36–37, it certainly is not required in every circumstance. *See, e.g.*, *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993) (explaining vacatur depends on "the seriousness of the [action's] deficiencies" and the "disruptive consequences" of vacatur). At a minimum, vacatur is premature absent a determination that the Librarian erred and briefing regarding whether that error requires vacatur, or whether remand without vacatur would be appropriate.

Ultimately, Plaintiffs' concerns are misdirected and Plaintiffs have not demonstrated that their claimed injury is redressable (let alone narrowly tailored) by vacatur or any other relief they seek in this lawsuit. Plaintiffs argue that "injuries that are resulting from the Exemption are being worked not by the Librarian or her subordinates 'implementing' the Exemption, but by the private third parties who are violating OEMs' copyrights under its apparent authorization." Pls.' Resp. at 23. But to the extent that any users engage in *infringing uses* of the copyrighted works installed on medical devices (even if the use is related to diagnosis, repair, or modification), that use is a copyright violation and OEMs may seek recourse under 17 U.S.C. §§ 501-505.[1] The Repair

---

[1] In addition, if any users engage in circumvention to access copyrighted works on medical devices for a purpose other than one provided for in the Repair Exemption (or any other temporary or permanent exemptions), then the Repair Exemption would not apply, and OEMs could claim that the circumvention violates § 1201(a)(1).

Exemption, as explained above, exempts the application of the anti-circumvention prohibition to users who engage in *noninfringing uses* of medical device software and data files. *See* 2024 Rule. Therefore, an infringing use is not traceable to the Repair Exemption, nor is any injury that results from an infringing use redressable by any remedy related to the Repair Exemption. Plaintiffs so much as acknowledge this, by claiming that their injuries are caused by third parties "not under the Court's jurisdiction in this suit and thus [not] bound by any injunction the Court may enter," Pls.' Resp. at 23. Importantly, an injunction must be no broader than "necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). Plaintiffs do not meet this threshold and therefore fail to show that vacatur, or any requested remedy is warranted here.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court grant their motion for summary judgment and deny Plaintiffs' motion for summary judgment.

Dated:  March 28, 2025

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

*/s/ Allyson R. Scher*
ALLYSON R. SCHER
Trial Attorney (DC Bar No. 1616379)
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-9836
E-mail: allyson.r.scher@usdoj.gov

*Counsel for Defendants*